IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT NORRIS, | |
| Plaintiff, | |
| v. | 15 CV 4692 |
| CITY OF HOMETOWN, KEVIN CASEY, and CHARLES FORSYTH, | PLAINTIFF DEMANDS TRIAL BY JURY |
| Defendants. | |

COMPLAINT

NOW COMES ROBERT NORRIS, by and through his attorney, JONATHAN LUBIN, and Complains of the CITY OF HOMETOWN, KEVIN CASEY and CHARLES FORSYTH, stating:

### Introduction

1. This is a civil action brought pursuant to 42 U.S.C. § 1983 et. Seq, the Fifth and Fourteenth Amendments to the Constitution of the United States, and pursuant to the common law of the State of Illinois.

### Jurisdiction and Venue

2. This Court has jurisdiction over the matters alleged herein under the Constitution and federal law pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1343. It has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside within the Northern District of Illinois, and a substantial portion of the events upon which the claim for liability is based occurred in the Northern District of Illinois.

## Parties

4.     Robert Norris ("Norris") is a resident of the State of Illinois, and was, for the relevant period, an employee of the City of Hometown.

5.     The City of Hometown ("Hometown") is a municipality located within Cook County, Illinois. For the relevant time, it employed Norris as a police officer.

6.     Kevin Casey ("Casey") was, for the relevant time, the mayor of Hometown, and is sued here in his individual capacity for actions he took by virtue of that position, under color of law.

7.     Charles Forsyth ("Forsyth") was, for the relevant time, the Chief of Police of Hometown, and is sued here in his individual capacity for actions he took by virtue of that position, under color of law.

## Facts Common to All Counts

8.     Until July 28, 2014, Officer Robert Norris was a police officer for Hometown, Illinois.

9.     The ordinances of Hometown provide that patrolmen are "at-will" employees of Hometown. It does not provide that any other employees of the Hometown Police Department are "at-will."

10.     Norris was not a patrolman. Rather, he was an officer, a more senior position. As such, he was not an "at-will" employee, but rather an employee who could only be terminated for cause. The applicable ordinances also stated that officers could only be terminated by the Mayor, and not by the Chief of Police.

11.     Norris was, therefore, entitled to a pre-termination hearing, and a more robust post-termination hearing under <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532 (1985); see also <u>Carmody v. Board of Trustees of the University of Illinois</u>, ___ F.3d ___ (7 Cir. 2014).

12.     On July 25, 2014, Norris responded to a call regarding a dog, believed to be a mix between a German Sheppard and a Pit Bull. According to the call, the dog had escaped its yard, and was at large. After Norris received the call, he proceeded to the scene of the event in progress.

13.     When he arrived, he spoke with an individual named Nicole E., who stated that the dog was her sister's, that she did not want to be responsible for the dog, that the dog had escaped, and that the dog periodically escapes at will.

14.     While Norris and several other officers attempted to corral the dog back into the back yard from whence it came, the dog began to advance on Norris while simultaneously growling at him. As the dog began to advance on Norris, Norris began to fear for his safety and for the safety of others nearby.

15.     He therefore pulled his service weapon out, pursuant to his training as a police officer of Hometown, Illinois, and discharged the weapon at the dog. At the time he did so, the German Sheppard-Pit Bull mix was within three feet of Officer Norris, and was advancing on him while growling at him.

16.     As a result of the incident, the City of Hometown received considerable press coverage over the next several days.

17.     On July 28, 2014, the Chief of Police (not the Mayor) issued a letter to the press, and to other officers, stating that he had terminated Officer Norris over the incident. Norris was terminated without either a pre-termination hearing or a post-termination hearing.

18.     The letter contained a number of defamatory statements regarding Norris, and his job performance. For example, the letter stated that "when we take that oath of office as Police Officers we swear to serve and protect." As if to suggest that Office Norris was somehow in violation of that oath, the letter continued that officers "must at times consider the safety of the lives and welfare of others." It then posited that "if an Officer makes a decision that endangers the lives and safety of the public then no I will not back them up" (sic).

19.     The termination was despite Forsyth, and Casey's awareness of the fact that Norris's decisions were consistent with his training, and that they were made for the sake of protecting himself, and the lives and welfare of others.

20.     Had Norris been given a hearing to determine whether he could be terminated "for cause," he would have emerged victorious, because he did not give anybody cause to terminate him.

21.     However, he was not given a hearing at any time.

22.     As a result of the termination, and of the defamation, Norris suffered damages. First of all, he lost his job with Hometown, which meant that he no longer was making the money he otherwise would have made from Hometown. Further, he lost a part-time position he had as a security guard as a result of the termination.

23.     The damages did not stop there, however. The termination, and the defamation, also threatened Norris's job as a fraud investigator for an insurance company. The defamatory letter inspired people across the country to call Officer Norris at all times of day, and threaten him. Altogether, these damages have effected Norris's reputation, his ability to earn an income, and his emotional wellbeing.

Count I – Due Process Claim<br>42 U.S.C. § 1983

Plaintiff repeats and re-alleges paragraphs 1-23 as if stated herein in full.

24.     Plaintiff was entitled to his employment absent good cause for his termination.

25.     He was also entitled to certain due process requirements, including notice, and a hearing.

26.     There was no good cause for his termination, and he was not given a hearing.

27.     As a result, he not only lost his employment wrongfully, but was defamed in the process, causing damages.

Count II – Deprivation of Plaintiff's Reputation<br>42 U.S.C. § 1983

Plaintiff repeats and re-alleges paragraphs 1-27 as if stated herein in full.

28.     Plaintiff possessed a liberty interest in his employment and his professional reputation. Forsyth's letter, accompanying Plaintiff's termination, violated that liberty interest.

29.    That defamation was adopted by the mayor, Kevin Casey on behalf of the entire municipality.

30.    As a result, Plaintiff suffered damages.

Count III – Equal Protection
42 U.S.C. § 1983

Plaintiff repeats and re-alleges paragraphs 1-30 as if stated herein in full.

31.    The decision to terminate Plaintiff, and to defame him, was arbitrary, and was not based upon any rational or legal interest of the City of Hometown.

32.    At all times, Plaintiff acted properly, and in accordance with his training as a Hometown police officer, and with his right to defend his own life and safety they are threatened.

33.    As a result of Defendants' actions, Plaintiff suffered damages.

Count IV – Defamation

Plaintiff repeats and re-alleges paragraphs 1-33 as if stated herein in full.

34.    Plaintiff suffered damages due to Defendants defamatory letter, which was published to the national media.

35.    His reputation was not just damaged in Hometown, Illinois, where he was employed, but across the entire country, as the national media reported the letter, which stated wrongfully that Plaintiff acted in an arbitrary and even dangerous manner.

Count V – Intentional Infliction of Emotional Distress

Plaintiff repeats and re-alleges paragraphs 1-35 as if stated herein in full.

36.    As a result of Defendants' actions, Plaintiff's reputation suffered, he lost two different jobs, his name was smeared before the entire United States of America, wrongfully, and he began to receive multiple hateful and threatening phone calls to

his home. Plaintiff took certain steps that had not been taken, prior to that time, to ensure his own safety, and the safety of his family and his home.

37.     In two words, Defendants' actions were extremely outrageous.

37.     All of this caused Plaintiff to suffer emotional distress.

        WHEREFORE, Plaintiff requests that this Honorable Court enter an Order fining that Defendants are liable for Intentional Infliction of Emotional Distress, Defamation, and under 42 U.S.C. § 1983 to Plaintiff, and required Defendants to:
        (a) Reinstate Plaintiff to his prior position, with all benefits and seniority intact as if Plaintiff had been employed from the date of his termination until the time of the entry of a final order;
        (b) Pay Plaintiff back wages equivalent to the wages, including benefits, he would have earned had he been employed from the moment of his termination until the entry of a final order;
        (c) Pay damages to Plaintiff for emotional distress, and other consequential damages suffered by Plaintiff based upon Defendant's actions;
        (d) Pay Plaintiff's reasonable attorneys fees associated with bringing this action;
        (e) All other damages to which this Court deems Plaintiff is entitled; and
        (f) All other damages that this Court deems to be just, and equitable.

Respectfully Submitted,

s/Jonathan Lubin
Law Office of Jonathan Lubin
203 N. LaSalle St.
Suite 2100
Chicago, IL 60601
(773) 954-2608
jonathan@lubinlegal.com